IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**May 23, 2024**

ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**WILLIAM BLAINE WINTERS,**
**Claimant Below, Petitioner**

**v.) No. 23-ICA-87**  (WorkForce W. Va. Bd. of Rev. Case No. X-2022-0314)

**WORKFORCE WEST VIRGINIA and**
**ALL QUALITY, LLC,**
**Respondents Below, Respondents**

**MEMORANDUM DECISION**

Petitioner William Winters appeals the February 10, 2023, decision of the WorkForce West Virginia Board of Review ("Board"). Respondent WorkForce West Virginia ("WorkForce") timely filed a response.[1] Respondent All Quality, LLC, ("All Quality") did not participate in this appeal. Mr. Winters filed a reply. The issue on appeal is whether the Board erred in holding that Mr. Winters did not show good cause for his late appeal of a WorkForce deputy's decision dated April 14, 2021.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Winters worked for All Quality, a construction company, from October 13, 2018, to March 20, 2020, when he was furloughed due to the COVID-19 pandemic. Mr. Winters' primary job duty was installing fencing. On April 17, 2020, All Quality sent notice to employees regarding returning to work as it reopened on April 20, 2020. Mr. Winters did not return to work and stated that he was unable to return due to his status as the primary childcare provider for his two children. He explained his situation to All Quality and was temporarily excused from returning to work.

Mr. Winters applied for unemployment compensation. He was approved for benefits consisting of both traditional unemployment compensation and pandemic unemployment assistance ("PUA"). On or around June 2, 2020, WorkForce placed a hold on Mr. Winters' claim based on information that was received from All Quality, which indicated that he

---

[1] Mr. Winters is represented by Lori M. Waller, Esq. WorkForce West Virginia is represented by Kimberly A. Levy, Esq.

had declined the offer to return to work. On June 4, 2020, the WorkForce deputy noted that she had spoken with the All Quality office manager and verified that there was no issue regarding a failure to return to work, and the issue was resolved. The hold was removed from Mr. Winters' claim, and payments resumed thereafter.

On or around April 12, 2021, WorkForce notified Mr. Winters that a second hold was placed on his claim. The notice instructed Mr. Winters that a failure to contact WorkForce by April 19, 2021, regarding his claim would result in a decision being issued based upon the information that was made available to WorkForce, including information it had received from All Quality on April 12, 2021. That information indicated that Mr. Winters abandoned his job voluntarily despite having previously stated that he could not return to work due to childcare issues. WorkForce also received information from the children's daycare center stating that Mr. Winters' younger child's last day at the center was March 13, 2020, prior to the COVID-19 pandemic, and that the daycare center was closed only from March 25, 2020, to March 27, 2020, due to the pandemic, and from August 4, 2020, to August 7, 2020, due to a positive COVID-19 case within the center. Mr. Winters' older child attends public school.

A WorkForce deputy's decision dated April 14, 2021, held that Mr. Winters voluntarily quit his position with no disqualification imposed, and that no eligibility issues existed for his claim. The deputy's decision noted that Mr. Winters was the primary childcare provider for his two children, and that he was forced to remain home until school and childcare options reopened.

All Quality appealed the deputy's decision dated April 14, 2021. On June 17, 2021, the WorkForce ALJ held a hearing. Mr. Winters did not appear at the hearing, and All Quality was present by telephone. In a decision dated June 17, 2021, the ALJ found that Mr. Winters stated to All Quality that he had lost childcare due to the pandemic and thus could not return to work. However, the ALJ found that the childcare center was closed only from March 25, 2020, to March 27, 2020, when Mr. Winters was furloughed, and that the closure did not affect his work. Further, the ALJ noted that Mr. Winters indicated to WorkForce that he would return to work in June 2020, but that he did not do so, and that he did not appear at the hearing to offer any evidence that he quit with good cause involving fault on the part of the employer. Based on the foregoing, the ALJ reversed the deputy and concluded that Mr. Winters did not meet his burden of proving that he had good cause to quit involving fault on the part of the employer and held that he was disqualified from receiving benefits. The decision noted that, once final, it would result in an overpayment of benefits.

On September 12, 2022, WorkForce sent Mr. Winters an overpayment agreement, which indicated that he owed $40,844 in past benefits. Mr. Winters filed an appeal of the June 17, 2021, ALJ decision on September 19, 2022. He asserted that he did not understand that he owed an overpayment in benefits, as WorkForce had previously held that he was

eligible to receive benefits. On October 12, 2022, the WorkForce office manager denied Mr. Winters' appeal as untimely. On October 18, 2022, Mr. Winters appealed this decision.

A hearing was held on November 3, 2022, on the sole issue of whether Mr. Winters provided good cause for the late appeal. Mr. Winters appeared telephonically. All Quality appeared by Pam Schumacher, Office Manager. WorkForce did not appear. Mr. Winters testified that he believed that the $42,000 overpayment was in error, and that he thought that he was disqualified from future benefits, not the benefits that were already received. Further, Mr. Winters stated that he went through multiple interviews and applications with WorkForce, and he was advised that he was eligible for benefits. Mr. Winters also testified that he did not receive notification of the June 17, 2021, ALJ hearing until after it took place. Ms. Schumacher stated that she did not have any evidence relating to the issue of the late filing of the appeal.

By decision dated November 9, 2022, the ALJ held that Mr. Winters failed to show good cause for his late appeal and denied his appeal. The ALJ noted that Mr. Winters appealed the ALJ decision on September 19, 2022, which was one year, two months, and twenty-nine days after his appeal deadline had expired. Further, the ALJ held that Mr. Winters' mistaken belief that he was disqualified only from receiving future unemployment benefits was without merit, as the June 17, 2021, ALJ decision set forth that an overpayment may be found and collected as provided by law. Based on the foregoing, the ALJ held that Mr. Winters failed to show good cause for the late appeal. On November 16, 2022, Mr. Winters appealed this decision to the Board.

By decision dated February 10, 2023, the Board affirmed the ALJ's decision in its entirety, and held that Mr. Winters failed to show good cause for the late appeal of the ALJ's decision. Thus, the Board denied Mr. Winters' appeal. It is from this decision that Mr. Winters now appeals.

In appeals from the Board, our standard of review is as follows:

> The findings of fact of the Board of Review of [WorkForce West Virginia] are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is de novo.

*Taylor v. WorkForce W. Va.*, 249 W. Va. 381, __, 895 S.E.2d 236, 241 (Ct. App. 2023) (alteration in original) (quoting Syl. Pt. 3, *Adkins v. Gatson*, 192 W.Va. 561, 453 S.E.2d 395 (1994)).

On appeal, Mr. Winters raises a single assignment of error in which he argues that the Board and the ALJ erred in determining that he had failed to show good cause for his late filing of the appeal below. Mr. Winters argues that he initially believed that no further

action was warranted because he did not understand the decision of the ALJ and the Board, and that when he learned of his error, he acted in a timely manner to request an appeal.

West Virginia Code § 21A-7-9 (1972) provides, in part:

A claimant, last employer, or other interested party may file an appeal to the board from the decision of an appeal tribunal within eight calendar days after notice of the decision has been delivered or mailed to the claimant and last employer. . . . The decision of the appeal tribunal shall be final unless an appeal is filed within such time.

Further, West Virginia Code of State Rules § 84-1-3.4 (2018) provides that:

All appeals must be filed in accordance with the time periods set forth in these rules. The postmark date is the filing date. If the last filing day for an appeal falls on a weekend, or a state or federal holiday, postmarking's for the next business day will be accepted. If the postmarked date is not legible or absent, then the Board or its designee may consider other factors to determine if the appeal is timely. For good cause shown, the Board or its designee may accept and process a late appeal.

This court has previously discussed the term "good cause" in the context of appeals from the Board. *See Davis v. WorkForce W. Va.*, No. 22-ICA-306, 2023 WL 7202574, at *3 (W. Va. Ct. App. Nov. 1, 2023) (memorandum decision). We noted that:

*Black's Law Dictionary* defines "good cause" as, "[a] legally sufficient reason. Good cause is often the burden placed on a litigant to show why a request should be granted or an action excused," and is synonymous with the terms "good cause shown; just cause; lawful cause; [and] sufficient cause." *Good Cause, Black's Law Dictionary* (11th ed. 2019).

Considering this definition and our rules of statutory construction, we conclude that the Board did not err in determining that Mr. Winters failed to establish good cause for his late appeal. Upon review of the record, it is apparent that Mr. Winters filed his appeal of the ALJ decision on September 19, 2022, over a year after his deadline to appeal. The ALJ found that Mr. Winters' mistaken belief that he was disqualified only for future unemployment compensation benefits did not constitute good cause. Further, Mr. Winters testified that he timely received the June 17, 2021, ALJ decision at his address and did not intend to file an appeal because he thought that the decision applied only to future benefits. The ALJ's decision clearly set forth that an overpayment may be found and collected. Based on the foregoing, we conclude that the Board did not err in finding that Mr. Winters failed to show good cause for his late appeal of the ALJ decision.

Accordingly, we affirm the Board's February 10, 2023, decision.

Affirmed.

**ISSUED:** May 23, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear